Oh, good morning, morning, your honor. Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Moore presiding along with Justice Barbaras and Justice Vaughn. The first case this morning is 524-0277, People v. Hunt. Arguing for the appellant is Andrew Moore. Arguing for the appellant, I believe, is Sharon Shanahan. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Judge Barbaras Good morning, counsel. Sharon Shanahan has a really good name, but I have to admit, I have a preference for Mr. Moore's name. Judge Barbaras No fair. Judge Barbaras Counsel for the appellant, please state your name and proceed. Andrew Moore Good morning, your honors. May it please the court. My name is Andrew Moore and I represent the appellant, Vincent Hunt, in this matter. The state concedes that it was a discovery violation to allow the body camera video of Mr. Hunt's arrest to be destroyed. The issues in front of this court are the nature and severity of the violation and whether or not Mr. Hunt was prejudiced by its loss. The state's concession that it violated discovery does not dispel Mr. Hunt's arguments that the judge misapplied the law in assessing the nature and severity of this violation. That's because the prosecutor, not Officer Wilson, was most at fault for this video being destroyed. The prosecutor was on notice that this video existed. It had access to it. The judge issued a discovery order requiring the prosecutor to locate it. Court rules, statutes, case law, all obligated the prosecutor to make a good faith effort to locate, preserve, and make available this body camera video. However, the judge treated this as a mere instance of officer negligence and framed it, or likened it to People vs. Tompkins. However, in Tompkins, the prosecutor never had access or custody of the body camera evidence because the officer never activated the body camera. Here, the body camera was activated and it was automatically uploaded based on, or automatically uploaded to the police cloud-based evidence storage system. The prosecutor should be looking for this evidence and it should be part of their good faith effort to access evidence like a body cam video of an arrest. The prosecutor decides if and what to charge based on the evidence that the police collect and that they review. It would be prudent to review these videos before charging people with felonies. Further, the prosecutor told the court and the defense in its answer to the court's discovery order the video would be available upon request. Yes, Your Honor? Oh, I'm sorry. I thought there was a question. Well, since we stopped, I will ask a question. The video allegedly just simply depicts the defendant either coming out of or from around the corner of the shed. How is that relevant to the overall case? It's relevant because, substantively, Mr. Hunt wasn't able to prepare his defense. Now, how so? What was so important about where he was coming from, either inside or out from around the corner of the shed, that would have influenced how he prepared his defense? Well, Your Honor, if the video showed him coming from on the side of the shed, as his testimony was, then coming out of the shed, it opens up a whole different purview of defenses, potential Fourth Amendment claims as to why would the officer be entering this shed. Well, the shed was allegedly open at the time. It wasn't that the officers had to open the shed, and there was... It would only have been open because the officer testified that Mr. Hunt was exiting it. If the body camera showed him coming from the side of it, then the officer would have had to open the shed in order to look inside of it. Well, isn't it possible that the shed was open regardless of where the defendant came from? It's possible, but that's not in... The record doesn't support that. How so? I didn't see anything about the doors to the shed anywhere in the record. I mean, that would be speculation, as the state says that... argues that whatever we say that this video could contain as speculation, well, that would be speculation as well. The reality is that he was prejudiced because he couldn't make his full defense. He couldn't impeach Officer Wilson on his account based on the video. And there's just an inherent prejudice because the legislature has made it... so these videos... has declared that these videos are important for police accountability, to collect evidence, and to increase the public trust in the judicial system. No, I don't disagree with you. However, the judge in this case decided that the best course of action was to allow the defense to vigorously cross-examine the officer on the stand and impeach him in that way. Was that not sufficient? And does the judge not have the right to decide what sanction to impose? The judge has the right to decide what sanction to impose, but where the judge went wrong in this case is he misinterpreted this as a situation where this evidence was never available to the prosecutor, such as in Tompkins. In that situation, it makes sense to cross-examine the officer about whether or not he purposely or inadvertently failed to activate his body camera. In this instance, there's no cross-examination of Officer Wilson that could remedy this because the evidence was in the state's possession, the prosecutor had it, it was ordered to disclose it, so cross-examining Officer Wilson doesn't get to that aspect of the error, which is really what caused this video to be destroyed. So the bottom line with regard to what could or could not have been on the body cam video is a credibility issue between the officer and the defendant, and isn't the overwhelming evidence, you know, this officer didn't do much in terms of testifying in this case, but with regard to the bag, the testimony that whatever was in the bag had been there, placed in there perhaps months earlier by his mother, and yet there was a receipt from him three or four days prior to the arrest in the bag, so it couldn't have been placed there a month earlier like he said, so his credibility was shot based on that. How would that have, the video, altered that? Um, well, first of all, having it, having, allowing defense counsel to cross-examine Officer Wilson based on his testimony puts Mr. Hunt into a credibility contest that he shouldn't have been in, in and of itself, so he's already at a, at a negative standpoint being a felon testifying against a police officer, but to answer your question about the mail, there's a number of issues with that. For one, the state never entered into the record what his mother's address is and what his address is, so we don't know if this mail was, maybe this mail was addressed to his mother's house, maybe it is on the record that his child lived with his mother from time to time, so he could have brought this mail there, you know, after this three months, but he just, you know, had assumed that what was in that bag had been put there months ago. It doesn't destroy his credibility, um, as you phrased it, but, um, without this video, he was at more of a disadvantage credibility-wise and in preparing his defense than whatever credibility issues came up with his testimony about how things got into that bag. So beyond, this is, this, the violation is beyond the mere negligence of a police officer forgetting to activate his body camera. This is more, beyond negligence, more into recklessness territory, because the prosecutor had all of this, all of these authorities pointing to it, stating that it had, it had to make a good faith effort to look for this, it never looked for it, and the video was destroyed. What is our standard of review? Um, this, this is a mixed question, so, um, anytime you're looking at the, how the, the court interpreted the law below, um, the facts here, you know, are sufficient to support, or the facts are complete enough to, for you to make a de novo review of his interpretation of the law, and our argument is that his assessment of the severity of this and likening it to Tompkins is more of a de novo question, because that is interpreting the law, um, but with regards to specifically what, um, what, um, sanction he issued, um, that would be an abuse of discretion, but you have to take into account when looking at whether or not he abused his discretion, um, the severity as well, but under either one, either standard of review, this case should be remanded because, um, um, the cross-examination of officer Wilson did, didn't at all address the reasons for this video being destroyed and didn't, it didn't remedy the situation. If anything, it made it worse for Mr. Hunt. Okay, thank you, counsel. Any questions from the court? Bond and Barbaras? Uh, no, thank you. Uh, Eppley? May it please the court, counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. In this case, the only dispute at the pretrial hearing, at the trial, and on appeal, is regarding the content of the body cam footage, and the only dispute about that, as Justice Barbaras noted, is that officer Wilson testified he saw the defendant coming out of the shed, and defendant himself testified that he was coming from the side of the shed where he gone to urinate. Um, as is repeatedly noted in the state's brief, and as Justice Barbaras, I think you noted in some of your questions, that doesn't matter. I mean, whether he was in the shed, or coming from the side of the shed, does not matter. At no time did the defendant dispute the fact that the door of the shed was open. It's a little too late to raise that issue at this point in time. The shed door was open, according to the officer that arrived, and in that shed, there was more than... Sorry. The backpack found in this shed undoubtedly belonged to the defendant. There was a gun in the backpack, and it had the defendant's DNA on it. The magazine of the gun had defendant's fingerprint on it. There were important identification cards. His state ID and his insurance card were both in that backpack. Those are both required to be carried when you're driving a car. Um, and again, as Justice Barbaras noticed, there was a receipt from Car X that had the defendant's name on it, and a date four days before the arrest. This is not mail, it's a receipt. It's something that someone gives you at the time it happens. So there was more than overwhelming evidence that had nothing to do with what could possibly be on this video. If it's what Officer Wilson testified to, then he was coming out of the shed. If it's what the defendant testified to, then he was coming from the side of the shed. My question is, so? Ms. Shanahan, let me ask you a question. With regard to, you know, if we disregard and just don't even set aside the evidence that was found in the shed, with regard to the body camera or the body cam video not being preserved and or uh, provided to the defense, is that in and of itself enough of a grave concern to do something, you know, other than affirm this case? In other words, is that of such importance? I mean, the defense brings up the fact that there are, you know, statutes involved and everything else that suggest that we, or that mandate that when there's a body cam video available, it's preserved and then it is presented to the defense so that everyone has an opportunity to see what was on it, regardless of what was on it. How important is the fact that the video wasn't preserved or given to the defense in this case? Well, there's no doubt it should have been preserved. There's absolutely no doubt about that. The question is, for both the police officer and the state's attorney, is how serious that violation was. And you cannot consider how serious that violation was without considering how it could have affected the case. So really, I don't think you can take just the body cam and disregard what was found in the shed and decide this case. It was a violation. Discovery violations require sanctions. There was a sanction in this case, which was to allow extensive cross-examination of the officer and to emphasize the dismissing evidence in closing argument. And I'm sure as this court knows, having reviewed the record, this, especially in closing argument, this defense counsel used that opportunity. And I mean, he just he talked about the troubling absence of the body cam footage. He said, and this is a quote, the video has mysteriously vanished. That's troubling and it should trouble you too. And I would note that this tactic may have worked in the defendant's advantage as it what is entirely reasonable that the missing body cam footage would have supported Officer Wilson's testimony. The record reflects that defendant did, in fact, his motion reflects that he did receive Officer Wilson's report. That report would have been issued or written right at the time of the arrest. And at that time, Officer Wilson thinks he has properly filed this body cam footage. It's highly unlikely that he would have written something different than he would have, than the body cam would have reflected. And I would direct this court to People v. Hall, which direct, which considers the fact that the report would probably support the officer's testimony. Let me redirect you for just a moment. And I don't mean to monopolize and direct where your arguments go. If Justice Moore, Justice Vaughn would like to have you address any other issues, certainly stop me. But I was wondering if you could just talk about the waiver and the forfeiture issue with regard to these issues. Oh, good, because that's exactly where I wanted to go next. Great minds think alike. First of all, the motion that the defendant filed did include four things. It included a jury instruction. It included dismissal of the case. It included barring the police officer from talking about anything that he saw. And it included, any, I think the phrase is any other relief. But at the hearing, defense counsel said, I don't think that dismissal is probably appropriate. And also at the hearing, he never even mentioned a jury instruction instead. And again, I am defense counsel. The only remedy as suggested by our Supreme Court is to say Officer Wilson can't talk about it. So that's all defense counsel asked for. That is waiver, not forfeiture, but waiver. And I discussed that in my answer brief. And so I don't feel like I need to go over that again, with one important exception. The state also argues forfeiture on all of the due process claims. There is no mention of a due process claim anywhere in the entire record. And yet defendant raises at least three in this brief. And the state argued that the case was forfeited. Now, for the first time in his reply brief, defendant says, oh, well, then it was plain error. And that's where we need to go back to waiver. Waiver, as this court has noted in People v. Holiday, and the Supreme Court has noted in People v. Patrick, when the defendant invites an error, then you can't even raise a plain error claim. So it is the state's position that none of the due process claims can even be raised because they were waived. The other thing I would note is that even constitutional errors can be forfeited under the plain error doctrine. So I think between forfeiture and waiver, the only thing left is just was there a discovery violation? Justice Vaughn, any questions? The appellant states that the standard review is de novo interpreting the statute. In your brief, you say the standard review is abuse of discretion with regard to the sanction for the discovery violation, that the court has authority or discretion to impose whatever sanctions are appropriate. Is that on a sliding scale depending on if it's intentional or negligent or inadvertent? The officer testified that he thought he uploaded it, he just tagged it incorrectly. And the court seemed to accept that. So and there's nothing to dispute it. I mean, I can't comment. The body cams are fairly new thing. And I don't know any more than what he testified about, which is that there were different ways to upload these things. And he really didn't know what happened to it. But it certainly was not intentional. It certainly was not bad faith. I mean, I defined bad faith in my brief. And this on the part of the police officer, and on the part of the state's attorney, there, there was no bad faith. The state stands by its position that the standard of review is abuse of discretion because the question here that is that the trial court recognized there was a discovery sanction. And having done that, the question is, was the sanction imposed by the trial court proper? And that's de novo review. Any other questions from the court? Okay, Reba. Your Honor, it's just a couple of things briefly. Regarding the the sanctions here. It's our opinion that in a case like this, where the prosecutor has this evidence, it's been ordered to produce it within 10 days, it tells the court, it will produce it upon request. And the prosecutor does not do that. The only real sanctions that could be issued are dismissal or that that was issued in clatus. And that's the simple reason because you can't call a prosecutor in front of a jury and ask them questions about why they didn't preserve a video. That's more of a legal question that should be handled pre-trial. And the only real pre-trial recourse that you could have here is to limit the testimony as in clatus or dismiss the case entirely. And the state says, with regards to how serious this violation is, is that you can't determine the seriousness of a violation without looking at the other evidence presented. That's putting the cart before the horse. The fact that other evidence supports that the destruction of a video would have been meaningless had we known what was on it, that doesn't do anything for what the legislature's purpose of the Body Cam Act is, which is to increase accountability, produce evidence, and increase the public trust in the court system. What you're arguing though, isn't the issue of dismissing the case been waived? If I wouldn't say that it was waived just because defense counsel said that he didn't think it was appropriate. Ultimately, he left it for the judge to determine. The judge didn't think it was appropriate. And really, waiver isn't a bar to this court. This court can decide how it wants to. So, it's not bound by the rules of waiver. But I would argue that that isn't waived merely because defense counsel said that he didn't think that dismissal was appropriate. And I don't know that it makes a whole lot of difference. But just for clarification, did the defense not request, I know that there's a standing order that the court issued with regard to the video being disclosed and preserved. But was there an additional request at some point the defense requested a copy of the video? And was that two years after the incident? The defense got videos from the state that wouldn't play. Mr. Hunt also did have two different attorneys. So, saying he didn't request it for two years is a little bit, I guess, it doesn't mean as much as it says because his new attorney had to get up to speed with the case. But ultimately, after reviewing or trying to review the videos that didn't work, his attorney did request the videos. But it was close to two years after. I'm sorry, when were the videos that didn't work given to the defense? I'm not entirely sure if the record is clear on that. Let me see. I don't think that it was, I don't think that's in the record. I could be wrong on that, though. Okay. From my understanding, the defense just attested that it got a, like a digital form of the videos that they couldn't play. So then him and Mr. Hunt went to the prosecutor's office to view the videos when the body cam wasn't there. Gotcha. Are you aware of any cases where the case was dismissed and that decision was affirmed or testimony was barred absent of showing of bad faith? People v. Clatus, testimony was barred. That was a state appeal. So that dealt more with, was the judge's, um, the judge's second. V. Clatus, it was just affirming that the trial court had discretion, though, that the trial court barred it and the appellate court affirmed the trial court's discretion. Isn't that correct? Correct. But the, in doing so, the Supreme Court also affirmed that just, like, not allowing this type of testimony when an officer loses, or when a body cam, in that case it was a dash cam, but fundamentally they're the same for this purpose. That a non-due process violation can lead to this level of sanction, which, like I said, it's really the only appropriate sanction when it's a prosecutorial error because defense counsel can't call the prosecutor up to account for why this video isn't isn't in front of the jury. Any other questions from the justices? None for me. No, thank you. Okay, the court will take the matter under advisement and issue its decision in due course. Thank you, counsel. Thank you, your honor. Thank you, your honor.